UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MUKONKOLE HUGE KIFWA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 2:15-cr-00177-DBH |
| | ) 2:17-cv-00365-DBH |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent | ) |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

In this action, Petitioner Mukonkole Huge Kifwa moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence.[1] (Motion, ECF No. 150.) In 2016, following a jury trial, Petitioner was convicted of visa fraud, bank fraud, a false statement to a government agency, and possession of firearms by a non-immigrant alien; the Court sentenced Petitioner to 46 months in prison. (Judgment, ECF No. 118 at 1-3; Jury Verdict, ECF No. 93.) The First Circuit affirmed the conviction and sentence. *United States v. Kifwa*, 868 F.3d 55 (1st Cir. 2017).

Petitioner alleges ineffective assistance of counsel at trial and sentencing. (Motion at 4-5.) Petitioner's claim of ineffective assistance at trial is based on the First Circuit's decision to dismiss without prejudice claims of ineffective assistance raised on direct

---

[1] The docket record lists four aliases for Petitioner Mukonkole Huge Kifwa: (1) Ndowa Adrien Lushiku; (2) Adrien Ndowa; (3) Adrien Lushiku; and (4) Hugue Kifwa. Petitioner alleges his name was changed legally in the Democratic Republic of Congo to Adrien Lushiko Ndowa. (Reply, ECF No. 158 at 2.)

appeal. (*Id.* at 4.) Petitioner's brief on appeal reflects he argued counsel was ineffective because counsel failed to request a continuance to review translation transcripts of Petitioner's recorded telephone conversations; because counsel did not argue that the delayed disclosure of the translation transcripts constituted prosecutorial misconduct; and because counsel failed to investigate the accuracy of the translation work.[2] In Petitioner's section 2255 motion, he also alleges that at sentencing, counsel advised him to answer "yes" to all of the Court's questions. (Motion at 5.) His reply contains additional claims not alleged in the section 2255 petition. (Reply, ECF No. 158.)

The Government has requested summary dismissal of Petitioner's section 2255 motion. (Response, ECF No. 157 at 1.)

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a citizen of the Democratic Republic of Congo (DRC). *Kifwa*, 868 F.3d at 58. As described by the First Circuit, Petitioner "entered the United States in February of 2014 on a non-immigrant diplomatic visa (purporting to be an employee of the DRC government). This fiction began to unravel when−in March of 2015−federal

---

[2] Petitioner's brief filed on direct appeal in the First Circuit (*United States v. Kifwa*, No. 16-1766) is attached to the Government's response to Petitioner's section 2255 motion. (Response, ECF No 157; Brief of Defendant-Appellant, ECF No. 157-14.)

2

authorities commenced an investigation into [Petitioner's] financial machinations, sparked by complaints about bad checks." *Id.*

Petitioner was arrested in July 2015, and in November 2015, he was charged in an eight-count superseding indictment with visa fraud, 18 U.S.C. § 1546(a) (Count 1); possession of a firearm by a non-immigrant alien, 18 U.S.C. §§ 922(g)(5), 924(a)(2) (Counts 2 and 3); bank fraud, 18 U.S.C. § 1344 (Counts 4-7); and a false statement, 18 U.S.C. § 1001(a)(2) (Count 8). (Superseding Indictment, ECF No. 43.) The indictment alleged the following regarding the false statement:

> [D]uring a post-*Miranda* interview, the defendant reported to special agents from [the Department of State, Diplomatic Security Services] and [the Department of Homeland Security, Homeland Security Investigations] that he had never been to Canada. In fact, he previously lived in Canada for many years and was deported from Canada multiple times.

(*Id.* at 8.)

Petitioner's section 2255 claims relate in part to counsel's decisions regarding the Government's translations from Lingala to English of Petitioner's recorded telephone calls with a cooperating witness, Eddy Mintela, while Petitioner was in pretrial detention.[3] (Motion at 4.) The First Circuit explained the relevant pretrial and trial proceedings regarding the translations as follows:

> About a month before the anticipated trial date, the district court held a hearing to determine the appellant's translation needs. The appellant explained that he speaks Lingala, French, and English (though he is more comfortable in French than English). The appellant confirmed that he did not

---

[3] "Seemingly unbeknownst to the appellant, Eddy Mintela (an associate whom the appellant frequently called from jail) had begun working with the prosecution as a cooperating witness." *Kifwa*, 868 F.3d at 59 n.1.

3

need Lingala translation but instead requested and secured French translation for trial.

Toward the end of the hearing, the prosecutor stated that she and defense counsel had just begun discussing the possibility that the government might use at trial the substance of certain telephone calls that the appellant had made from jail while in pretrial detention. She explained that the appellant had "made an extraordinarily large number of calls" from jail. Each call was fifteen minutes or less in duration, and at least two-thirds of the approximately 1200 calls were in Lingala. Like all personal calls made by prisoners from the jail, the appellant's calls had been recorded. The prosecutor told the court that the government was still in the process of identifying the relevant conversations and requesting the recordings.

Following this hearing, the government requested that the jail turn over recordings of roughly 285 to 300 calls. Promptly upon receiving these recordings, the government gave defense counsel a computer disc containing the audio files. Approximately two weeks later, the government (with Mintela's assistance) winnowed out fifteen calls as prime candidates for translation. The government contemporaneously notified defense counsel and singled out the relevant calls (all previously produced) by their identification numbers.

At that point, the government's efforts hit a snag: it experienced great difficulty in locating a Lingala translator. Eventually, though, the government was able to hire a Lingala translator in Boston who worked "around the clock" to translate and transcribe the fifteen calls. The government turned over the English-language transcripts on a rolling basis as it received them from the translator. The translator finished the final transcript around midnight on the evening before the trial was set to start, and the government gave it to the defense the next morning.

The appellant objected to the government's proposed use of the translations at trial, but he did not ask for a continuance despite the district court's apparent willingness to grant one. The court proceeded to deny the motion to exclude, but it ordered the government to show defense counsel the particular transcripts that it planned to use before calling any witness whom it intended to query about matters involving the transcribed conversations. The trial began as scheduled.

During the trial, the government entered four of the transcripts (totaling five pages of text) into evidence. In the government's view, the four transcripts showed the appellant asking Mintela to forge DRC name-change documents

> and create a story to bolster a bogus asylum claim. The government also presented testimony from Mintela himself as well as testimony from various immigration officials (who described several discrepancies and inaccuracies in the appellant's visa documentation). In addition, representatives of various banks described the appellant's penchant for passing bad checks and attempting to cash counterfeit checks.

*Kifwa*, 868 F.3d at 58-59 (footnote omitted).

Following a four-day jury trial in January 2016, Petitioner was convicted on all counts; the Court sentenced Petitioner to prison terms of 46 months on each of the counts, to be served concurrently. *Kifwa*, 868 F.3d at 59-60. (Judgment at 1-3.)

On appeal, Petitioner argued the Court should have granted his motion to exclude the transcripts, and the Court's failure to do so prejudiced him. *Kifwa*, 868 F.3d at 60. The First Circuit affirmed the conviction and sentence. *Id.* at 63 (concluding "that the appellant has not carried his burden of showing that the delayed disclosure caused him any unfair prejudice," and "the district court did not abuse its discretion in denying the appellant's motion to exclude the four translations"). The Court dismissed without prejudice Petitioner's ineffective assistance claim. *Id.* at 63-64 & n.5 (discussing *United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir. 1993), and noting the record was clear that counsel told the Court Petitioner resisted any delay).

Petitioner asserts that he signed and placed his section 2255 motion in the prison mailing system on September 12, 2017. (Motion at 12.) The Government does not contest the timeliness of Petitioner's motion.[4]

---

[4] *See* 28 U.S.C. 2255(f) (providing in pertinent part that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of – (1) the date on which the judgment of conviction becomes final.")

5

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the

authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

The Court need not address a claim that is raised for the first time in a reply. *See United States v. Barrett*, 178 F.3d 34, 57 (1st Cir. 1999) ("Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order."). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

## B. Claims and Analysis

### 1. Failure to request a continuance

Petitioner alleges counsel failed to prepare adequately for trial because counsel failed to request a continuance. (Motion at 4; Reply at 7-8.) Petitioner also alleges counsel failed to provide the telephone recordings to Petitioner or to review them with him. (Reply at 6.) He alleges counsel made the decision not to request a continuance of the trial, and counsel "was able to calm petitioner into not forcing" a continuance.[5] (Reply at 12.)

The First Circuit noted that this Court invited Petitioner to request a continuance, after the Court denied his motion to exclude the translation transcripts. *Kifwa*, 868 F.3d at 58. The First Circuit also observed Petitioner "never asked for a continuance when the disclosure was made," and "trial counsel told the district court that his client (the appellant) 'resisted any efforts to delay.'" *Id.* at 63 & n.4. The First Circuit thus noted that Petitioner personally resisted any delay in the trial. *Id.*

The First Circuit concluded Petitioner had failed to show prejudice. "Where, as here, a defendant spurns a continuance that would have cured the adverse effects of a delayed disclosure, a claim of prejudice will not lie." *Kifwa,* 868 F.3d at 63. The Court pointed out that Petitioner was a party to all of the telephone calls, the calls were recent,

---

[5] Petitioner contends that counsel should have requested a continuance after the Court denied the motion to exclude the transcripts. (Reply at 7-8.) Such a request would have been contrary to Petitioner's wishes as expressed to this Court before trial; the Court noted in the pretrial conference of counsel that Petitioner did not seek any extension from the requirements of the Speedy Trial Act, 18 U.S.C. § 3161. (Conference Tr., ECF No. 140 at 28.)

8

and the recordings were shared with the defense weeks before trial and reasonably soon after the Government obtained the recordings. *Id.* at 61.

> We also think it noteworthy that the appellant has neither identified any specific inaccuracies in the government's translations nor pointed to any specific piece of information as a source of unfair surprise. This lack of specificity has special significance because whether or not the appellant had adequate time to review the translations before trial, he surely had adequate time to review them when preparing his brief on appeal.

*Id.* The Court additionally explained that the case "does not exhibit any of the familiar telltales of prejudice." *Kifwa*, 868 F.3d at 62. As an example, the Court noted that counsel was able to use the translation transcript, albeit unsuccessfully, to blame the translator for a negative connotation to Petitioner's use of a word that had been translated to "steal" in one of the transcripts. *Id.* "Even so, he did not explain the other suspicious parts of the excerpt, such as specifying that the letter should be predated−and he offers no explanation now." *Id.*

The First Circuit also concluded that any delay in the disclosure of the translation transcripts did not foreclose strategic options regarding a plea or a decision whether to testify, because Petitioner had access to the recordings weeks before trial, he had the translation transcripts before the trial started, and there was "a wide range of witnesses and documentary evidence−known in advance to the appellant−to focus the jury's attention on the suspicious discrepancies in the appellant's visa paperwork, his erroneous statements to immigration officers, and his pattern of illegitimate financial dealings." *Id.* at 62-63.

The First Circuit's determination that the record established that Petitioner told counsel he did not want any delay, and the First Circuit's determination that there was no

9

prejudice from counsel's failure to seek a continuance of the trial, preclude Petitioner's claim of either deficient performance by counsel or *Strickland* prejudice. (Reply at 7.)[6]

## 2. Failure to argue prosecutorial misconduct

Petitioner alleges counsel was ineffective because counsel failed to argue that the delay in the disclosure of the translation transcripts was the result of bad faith by the prosecutor. (Motion at 4.) The First Circuit upheld the Court's conclusion that the Government's disclosure was not due to bad faith: "[T]he relevance of the telephone calls only became apparent late in the game, a large number of calls had to be appraised, and Lingala translators proved to be hen's-teeth rare." *Kifwa*, 868 F.3d at 61.

The First Circuit's conclusion that the Government did not act in bad faith precludes any underlying claim of bad faith, and, consequently, any related claim of ineffective assistance for failure to argue bad faith. *See Tse*, 290 F.3d at 465.

---

[6] Petitioner also alleges ineffective assistance concerning the audio recordings of the telephone conversations. (Reply at 6.) Regardless of whether Petitioner could or could not prove his allegation that counsel failed to provide him with the recordings or to review them with him, he cannot demonstrate prejudice:

> After all, the appellant was a party to all of the telephone conversations and, thus, must have been aware of their contents. What is more, the conversations were not retrieved from the distant past; the calls had been placed by the appellant while awaiting trial. It is fair to presume that appellant remembered the contents of the calls (at least, in general terms).

*Kifwa*, 868 F.3d at 61.

Petitioner also alleges, for the first time in the reply, either insufficient evidence or actual innocence regarding the visa fraud conviction. (Reply at 3.) *See United States v. Barrett*, 178 F.3d 34, 57 (1st Cir. 1999). Regardless of whether the allegations should be addressed, given that Petitioner failed to raise them in his initial section 2255 motion, the allegations fail on the merits, because the First Circuit, in its discussion of whether Petitioner might have pled guilty if he had had the translations earlier, concluded that there was "a wide range of witnesses and documentary evidence" of guilt on all of the charges. *Kifwa*, 868 F.3d at 62-63.

10

### 3. Failure to investigate the accuracy of the translation transcripts

On appeal, Petitioner argued counsel was ineffective because he failed to retain a Lingala/English translation expert, and failed to investigate the accuracy of the translation transcripts. (Brief of Appellant-Defendant, ECF No. 157-14 at 80-81.) Petitioner argued he was prejudiced because "there are record indications that those translations were faulty but defense counsel was unprepared to challenge the Government's translations." (*Id.* at 81-82.)

Petitioner cannot demonstrate either deficient performance by counsel or prejudice to Petitioner regarding counsel's failure to engage a Lingala translation expert. Counsel moved to exclude the translation transcripts (Motion to Exclude, ECF No. 81), but he did not move to continue the trial, because Petitioner did not want to delay the trial. (Conference Tr., ECF No. 140 at 25; Trial Tr. I at 8.) Counsel objected, on the grounds set forth in the motion to exclude, when the translation transcripts were offered in evidence. (Trial Tr. I, ECF No. 131 at 242.) Petitioner's own decision to decline the opportunity to continue the trial necessarily meant that there would be insufficient time between the completion of the translation transcripts on the eve of trial, and the commencement of the trial, to engage a Lingala expert to review the Government translator's work. Under the circumstances, counsel's performance was reasonable, and Petitioner cannot demonstrate prejudice from counsel's failure to engage a Lingala translation expert. *See Strickland*, 466 U.S. at 689, 694.

Petitioner asserts he was not "given the opportunity to aid in deciphering the meanings or context of [the] conversations" despite having raised the issue with counsel.

11

(Reply at 4.) Petitioner alleges specifically a faulty translation regarding the use of the word "steal" in one of the transcripts. (*Id.* at 6.) Petitioner testified on cross-examination at trial that "the interpretation may be wrong." (Trial Tr. (Excerpt), ECF No. 101 at 104.) The First Circuit noted Petitioner addressed the issue when he "made a valiant (though unconvincing) attempt to refute the government's interpretation of the recordings at trial." *Kifwa*, 868 F.3d at 62. That Petitioner's attempt was unconvincing does not render counsel's performance deficient, and Petitioner alleges no additional specific problems with the translation. *See Strickland*, 466 U.S. at 699.

Petitioner apparently attempted to assert, for the first time in the reply, an ineffective assistance claim regarding a language issue that is unrelated to the translation transcripts. The claim concerns the conviction for making a false statement, and Petitioner's response of "Congo" to a question posed by the arresting officer.[7] (Reply at 6.) Petitioner's section 2255 reply allegation does not appear to relate to the claims raised in his section 2255 motion.

The Court may decline to address a claim that is raised for the first time in a reply. *See Barrett*, 178 F.3d at 57. However, even if Petitioner had made the allegation in his section 2255 motion, it would fail on the merits, because there was evidence, provided by the arresting officer's trial testimony, that Petitioner falsely stated that he had never been

---

[7] At trial, Petitioner testified, on direct examination, that he thought the arresting officer had asked him if he came from Canada, and he answered "No." (Trial Tr. (Excerpt), No. 101 at 55.) In response to the question: "[Y]our understanding of the question was did you come here from Canada?" Petitioner replied: "Yeah, like if I crossed the border from Canada to come to the United States. No, I never come [sic] Canada from the United States, no." (*Id.*) Counsel asked: "Or come to the United States from Canada?" Petitioner replied: "No, I came from Congo." (*Id.*)

12

to Canada. (Trial Tr. I at 87.) Because Petitioner has no meritorious underlying claim regarding the evidence in support of the conviction, any related ineffective assistance claim fails as well. *See Tse*, 290 F.3d at 465.

Petitioner also alleges "[m]any times it was mentioned [he] was deported from Canada. Petitioner is a dual citizen of Congo." (Reply at 4.) The issue of Petitioner's deportations from Canada appears for the first time in the reply, and it is unrelated to his section 2255 claims regarding the translation transcripts of his pretrial detention telephone conversations. *See Barrett*, 178 F.3d 57. Had Petitioner raised an ineffective assistance claim based on the issue of Petitioner's Canadian deportations, the claim would have failed on the merits, as counsel addressed the issue in a pretrial motion in limine. (Motion, ECF No. 67.) The Court ruled that no action was necessary on the motion, as stated on the record. (Order, ECF No. 78.) At the pretrial conference, the parties agreed that allegations in the superseding indictment that Petitioner had been deported from Canada would be redacted, and the Government agreed to avoid mention of the Canadian deportations at trial. (Conference Tr. at 2-4.) Counsel's performance thus was not deficient, and Petitioner has failed to demonstrate any prejudice.

### 4. Failure to discredit the Government's witness

Petitioner alleges for the first time in his reply that counsel failed to call additional witnesses at trial to discredit the Government's cooperating witness, Mintela.[8] (Reply at

---

[8] At the pretrial conference of counsel, counsel told the Court: "My client informed me after jury selection that he had three or four witnesses that he wanted to call . . . ." (Conference Tr., ECF No. 140 at 30.) It appears one of the witnesses identified in Petitioner's reply was present at the trial but did not testify. (Reply at 4; Trial Tr. I, ECF No. 131 at 19, 23-24.)

13

4.) Petitioner identifies two witnesses whom he asserts would have "clarified the relationship" between Petitioner and Mintela. (*Id.*) He alleges a third witness would have corroborated the testimony of one of the other witnesses. (*Id.*) Petitioner also contends counsel should have offered evidence, apparently through one or more of the additional witnesses, regarding the benefit Mintela received in return for his testimony; Petitioner alleges Mintela received permission for him and his family to remain in the United States. (*Id.*)

The Government elicited on direct examination that Mintela hoped the Government would recommend a sentence reduction in return for Mintela's cooperation with the Government. (Trial Tr. I at 171.) Petitioner's counsel asked Mintela on cross-examination whether he understood that if he were convicted, he could be deported. (Trial Tr. I at 230.) Because the Government elicited the nature of the cooperation deal and the benefit to Mintela, counsel's performance was not deficient, nor was Petitioner prejudiced by counsel's failure to inquire further. Furthermore, there is no support for Petitioner's allegation that when Mintela testified, he might have been under the impression he could be granted permission to remain in the United States in return for his cooperation.

Regardless of whether the claim concerning the additional witnesses should be considered given that Petitioner asserted it for the first time in the reply, *see Barrett*, 178 F.3d 57, the claim fails on the merits because it is vague and unsupported in the record, and because Petitioner fails to allege how the additional testimony would have helped his defense. *See David*, 134 F.3d at 478.

### 5. Advice at sentencing

Petitioner asserts that at sentencing, counsel advised him to answer "yes" to all of the Court's questions. (Motion at 5.) He alleges in his reply that although he expressed dissatisfaction with counsel at sentencing, he followed counsel's instructions because he feared reprisal in his home country. (Reply at 3, 10-11.) He evidently also contends that he did not understand the sentencing proceedings, and that counsel failed to prepare for sentencing. (*Id.* at 3.)

In a chambers conference of counsel at sentencing, counsel informed the Court that Petitioner was "really angry" at counsel, and Petitioner was "acting like he doesn't understand anything that has happened or is going to happen." (Sentencing Tr., ECF No. 141 at 2.) The Court noted that Petitioner had sent, and the Court had reviewed, "a series of letters" concerning Petitioner's relationship with counsel. (*Id.* at 3.)

At the start of the sentencing hearing, the Court asked Petitioner, who had a French-speaking court-appointed interpreter, whether Petitioner wanted to continue to have counsel represent him at sentencing, given the complaints Petitioner had expressed to the Court about counsel. (*Id.* at 6, 8-9.) Petitioner responded, through the interpreter, "I will continue," and he responded affirmatively when the Court asked whether he was satisfied with his representation for purposes of sentencing. (*Id.* at 9.) Petitioner also told the Court, in response to the Court's questions, that he had not taken any drugs or alcohol in the past 24 hours; that he was not then on any medicine; that he had read the revised presentence investigation report and had discussed it with counsel; and that he had sufficient time to review the report. (*Id.* at 10.) In response to the Court's question about

15

the use of the interpreter, Petitioner responded that he wanted to use the interpreter only when he was uncertain about what something meant. (*Id.* at 14-15.) The record reflects Petitioner did not engage the interpreter for the remainder of the hearing.

"The need for competency survives trial and extends through the sentencing phase of a criminal proceeding." *United States v. Pellerito*, 878 F.2d 1535, 1544 (1st Cir. 1989). "Surely, the sentencing process necessitates that the defendant possess both a 'present ability to consult with [a] lawyer with a reasonable degree of rational understanding,' and a 'rational as well as factual understanding of the proceedings.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (defining competence to stand trial)).

The claim is procedurally defaulted to the extent Petitioner alleges he was not mentally competent to be sentenced, because Petitioner failed to raise the issue on appeal. *See Berthoff*, 308 F.3d at 127-28.

In addition, Petitioner's allegation that he did not understand the sentencing proceedings is directly contradicted by the record, particularly by his responses to the Court's questions during the hearing, his decisions regarding when the interpreter was needed, and his extensive allocution (Sentencing Tr. at 57-69). *See David*, 134 F.3d at 478. There is simply no record support that Petitioner lacked the ability to understand the proceedings. *See Pellerito*, 878 F.2d at 1544.

Furthermore, even if Petitioner demonstrated that his decision to follow counsel's advice at sentencing was motivated in part by a fear of reprisal in his home country, he could not establish that he was incompetent to be sentenced, *see Pellerito*, 878 F.2d at 1544, or that he experienced a due process deprivation at sentencing. *See United States v.*

*Stile*, 845 F.3d 425, 430 (1st Cir. 2017) (noting a Fifth Amendment "due process right not to be sentenced on false information," and a right to "an adequate opportunity to refute information relied on at sentencing;" and noting a due process right under Fed. R. Crim. P. 32 "'to speak or present any information to mitigate the sentence'") (quoting Fed. R. Crim. P. 32(i)(4)(A)(ii)).

Because Petitioner's sentencing arguments fail, his related ineffective assistance claim fails. *See Tse*, 290 F.3d at 465.

### III.  CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated this 10th day of April, 2018     /s/ John C. Nivison
                                        U.S. Magistrate Judge